UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IRIS GRAHAM and VICTOR GRAHAM,

                Plaintiffs,

        v.

HSBC MORTGAGE CORPORATION, et. al.,

                Defendants.

No. 18-CV-4196 (KMK)

OPINION & ORDER

Appearances:

Iris Graham
Victor Graham
Mt. Vernon, NY
*Pro se Plaintiffs*

Brian Scott Pantaleo, esq.
Greenberg Traurig
West Palm Beach, FL
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiffs Iris Graham and Victor Graham ("Plaintiffs") bring this pro se action against HSBC Mortgage Corporation ("HSBC"), Ocwen Loan Servicing, LLC ("Ocwen"), and Stewart Title Agency ("Stewart Title") (collectively, "Defendants"), alleging fraud, misrepresentation, and other state law claims. (*See* Compl. (Dkt. No. 3).) Before the Court is Defendants' Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. (Dkt. No. 16).) For the reasons to follow, Defendants' Motion is granted.

I. Background

A. Factual Background

      The following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of deciding the instant Motion.

On June 19, 2006, Plaintiffs executed a mortgage (the "Mortgage") with Fremont Investment ("Fremont"), pursuant to which Fremont extended to Plaintiffs a loan of $492,000 secured by property located at 320 South 9th Avenue, Apartment 1, Mount Vernon, New York 10550 (the "Property"). (Compl. ¶¶ 3, 8.) The Property was originally built in 1924 as a two-family residence, with three apartments on three levels. (*Id.* ¶ 7.) On January 26, 1925, the Department of Public Safety Bureau of Buildings (the "PSBB") issued a Certificate of Occupancy (the "Certificate") classifying the Property as a "2 family dwelling." (*Id.*) At some point subsequent to the issuance of the Certificate, but prior to Plaintiffs occupying the Property, it was "illegally converted" to a four-unit dwelling "at no fault of the Plaintiffs." (*Id.*) Fremont did not disclose that the Property had been classified as a two-family residence by the PSBB. (*Id.* ¶ 8.) Fremont subsequently assigned its rights to the Mortgage to Defendant HSBC. (*Id.*)

On December 9, 2010, the Department of Buildings of the City of Mount Vernon ("DOB") issued Plaintiffs a "Notice of Violation #37121" (the "Notice"), due to the Property having been improperly converted to a four-unit dwelling. (*Id.* ¶ 9.) As a result of the violation, DOB "has been fining Plaintiffs $1,000 per day and subjecting Plaintiffs to one year in prison." (*Id.*) Defendant Stewart Title "cleared [the] [P]roperty to close without properly matching the property details and descriptions with county land records," and "allowed for the [M]ortgage to be approved for refinancing" as a four-unit residence. (*Id.* ¶ 10.)

HSBC is the current owner of the loan, and Defendant Ocwen is the current loan servicer. (*Id.* ¶ 11.) Ocwen's broker price option ("BPO") and value inspection reports characterize the Property as a four-family residence. (*Id.* ¶ 12.) Plaintiffs "became delinquent on the Mortgage" in 2009, and HSBC, Ocwen, and Fremont have "brought forth multiple foreclosure actions against Plaintiffs in an attempt to foreclose on the . . . Property." (*Id.* ¶¶ 14–15.) Most recently,

2

the Ninth Judicial District Court issued a "Notice to Resume Prosecution of Action and to File Note of Issue" against HSBC "due to its 'neglect to prosecute.'" (*Id.* ¶ 14.) Fremont continues to attempt to foreclose on the property. (*Id.* ¶ 15.) Additionally, Alti-Source Solutions ("Alti-Source"), allegedly Ocwen's "sister company," has charged Plaintiffs "multiple excessive and unsubstantiated 'junk fees' ranging from $18.00 to $110.00 for BPO inspections, $300 to $500 for title searches, and $8.00 to $15.00 for countless exterior property inspection fees." (*Id.* ¶ 16.)

Plaintiffs assert three causes of action against Defendants. The First Cause of Action is a claim for fraud, alleging that Fremont "fraudulently classified" the Property as a four-unit dwelling and that Defendants failed to disclose this information to Plaintiffs at any point. (*Id.* ¶¶ 18–26.) Plaintiffs' Second Cause of Action is for misrepresentation based on the same allegations. (*Id.* ¶¶ 28–34.) Plaintiffs' Third Cause of Action is for violation of "New York Code" § 349. (*Id.* ¶¶ 36–37.) Plaintiffs seek injunctive relief, reimbursement for all fines issued by DOB, compensatory and punitive damages, and "the monetary equivalent of attorney's fees and costs." (*Id.* at 17.)

B.  Procedural History

Plaintiffs filed the Complaint on May 9, 2018. (Compl.) On July 9, 2018, Plaintiffs were granted permission to proceed in forma pauperis. (Dkt. No. 4.) On October 17, 2018, with leave of the Court, (Dkt. No. 12), Defendants filed the instant Motion To Dismiss, (Not. of Mot.; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 19); Defs.' Decl. in Supp. of Mot. ("Defs.' Decl.") (Dkt. No. 17)). Plaintiffs filed a response on November 19, 2018, (Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 23)), and Defendants filed a reply on November 27, 2018, (Defs.' Reply in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 24)).

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Motion To Dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, citations, and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citation omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [the complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted). However, when the complaint is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[] either possessed or

5

knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted).

B. Analysis

Defendants argue that Plaintiffs' claims are barred by the respective statutes of limitations, and that Plaintiffs failed to state a claim. Further, Defendants argue that Plaintiffs released Defendants from liability for all the claims in this Action in a prior settlement. (*See generally* Defs.' Mem.)

1. Statute of Limitations – Fraud and Negligent Misrepresentation

"Under New York law, the time within which an action based upon fraud must be commenced is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it.'" *Koch*, 699 F.3d at 154 (alteration omitted) (quoting N.Y. C.P.L.R. § 213(8)); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 477 (S.D.N.Y. 2014) (same). Similarly, "New York courts apply a six year statute of limitations to negligent misrepresentation claims sounding in fraud." *United Teamster Fund*, 39 F. Supp. 3d at 477 (citation omitted).

A claim based on fraud "accrues as soon as 'the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.'" *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 550 (S.D.N.Y. 2016) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009))). Where, as here, a plaintiff alleges that a fraudulent statement induced them to enter into an agreement or make a purchase, "[a] fraud claim accrues . . . at the time the defendant makes a knowingly false statement of fact with the intent to induce reliance on that statement." *Kwan v. Schlein*, 441 F. Supp. 2d 491, 504

6

(S.D.N.Y. 2006) (citation omitted); *see also Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (App. Div. 2007) (finding fraud claim accrued "when the plaintiff transferred the money in reliance upon the defendants' allegedly false representations").

The discovery rule "postpones the accrual of a cause of action from the time when the tort is complete to the time when the plaintiff has discovered sufficient facts to make him aware that he has a cause of action." *Ruso v. Morrison*, 695 F. Supp. 2d 33, 45 (S.D.N.Y. 2010) (citation omitted). "The statute of limitations period applicable to discovery of the violation begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Hopkinson v. Estate of Siegal*, No. 10-CV-1743, 2011 WL 1458633, at *5 (S.D.N.Y. Apr. 11, 2011) (alteration omitted) (citing *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003)), *aff'd*, 470 F. App'x 35 (2d Cir. 2012). "Determining when discovery was reasonably possible turns on when Plaintiffs 'were possessed of knowledge of facts from which the fraud could be reasonably inferred.'" *Ramiro Aviles v. S & P Glob., Inc.*, No. 17-CV-2987, 2019 WL 1407473, at *27 (S.D.N.Y. Mar. 28, 2019) (alterations, citation, and some quotation marks omitted) (quoting *Sargiss v. Magarelli*, 909 N.E.2d 573, 576 (N.Y. 2009)). "Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (citation, alteration, and quotation marks omitted).

Finally, "[a]lthough the triggering of inquiry notice is an issue 'often inappropriate for resolution on a motion to dismiss,' where 'the facts needed for determination of when a

7

reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate.'" *GVA Mkt. Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (alterations omitted) (quoting *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 48 (2d Cir. 2008)).

Plaintiffs' claims are time-barred "regardless whether the six-year limitations period dating from the fraud or the two-year period dating from its discovery applies." *Pirri v. Cheek*, No. 19-CV-180, 2019 WL 2472438, at *4 (S.D.N.Y. June 13, 2019). Under the six-year statute of limitations, Plaintiffs' claims accrued, at the latest, when they were induced to purchase the Property, on June 19, 2006, and the six-year statute of limitations expired on June 19, 2012. *See Koch*, 699 F.3d at 154 (noting fraud claim accrual date was the date "the alleged fraud was completed . . . when [the plaintiff] purchased the [fraudulent goods]"); *New York Univ. v. Factory Mutual Ins. Co.*, No. 15-CV-8505, 2018 WL 1737745, at *7 (S.D.N.Y. Mar. 27, 2018) (finding fraudulent inducement claim accrued when the plaintiff purchased the insurance policy at issue, noting the plaintiff "was damaged when it purchased the policy" (citation omitted)); *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 116 (S.D.N.Y. 2016) (finding an injury for fraudulent inducement can "be truthfully alleged . . . when the parties execute[] the . . . agreement" at issue (citation omitted)). Under the two-year statute of limitations, even construing the Complaint liberally, Plaintiffs had all the information necessary to discover their causes of action on December 9, 2010, when DOB issued its Notice of Violation, and the statute of limitations expired December 9, 2012. Indeed, Plaintiffs could not argue that they were unaware of their injuries at that time in light of the allegation that have been fined $1000 per day since receiving the Notice. Even applying the six-year statute of limitations to the later date fails

to save Plaintiffs' claims, as they filed the Complaint on May 9, 2018, more than seven years after they learned that the Property had been improperly classified.

Plaintiffs argue that they "did not discover Defendants' fraudulent actions until 2017," when they "consulted knowledgeable third parties and conducted an independent investigation." (Pls.' Mem. 6; Compl. ¶ 26.) Plaintiffs emphasize that they are "laymen" who "were unaware of their legal rights until they consulted knowledgeable third-parties." (Pls.' Mem. 7 n.1.) However, the relevant inquiry is not when Plaintiffs became aware that they had a legal cause of action, but rather when they had "sufficient operative facts that indicate that further inquiry is necessary." *Brown v. Kay*, 889 F. Supp. 2d 468, 483 (S.D.N.Y. 2012) (citations and quotation marks omitted); *see also Adams v. Deutsche Bank AG & Deutsche Bank Sec., Inc.*, No. 11-CV-1893, 2012 WL 12884365, at *4 (S.D.N.Y. Sept. 24, 2012) ("Put simply, the discovery rule does not stop the statute of limitations and permit a party to wait until a claim is served up on a silver platter; rather, the limitations period begins to run when a plaintiff is placed on notice of the probability that he or she has been defrauded."), *aff'd*, 529 F. App'x 98 (2d Cir. 2013); *Watts v. Exxon Corp.*, 594 N.Y.S.2d 443, 444 (App. Div. 1993) ("[H]aving positive knowledge of fraud is not required to commence the running of the two-year Statute of Limitations."). Plaintiffs' failure to seek advice from "knowledgeable third parties" until 2017, despite having received a Notice from BOP identifying the issue and fining Plaintiffs daily for the ongoing violation, does not change the fact that Plaintiffs had sufficient facts on December 9, 2010 to alert them to the fact that further inquiry was required. *See New York Univ.*, 2018 WL 1737745, at *9 (granting motion to dismiss based on two-year discovery rule where "the facts as alleged present no dispute as to [the plaintiff's] knowledge; rather, they 'establish that a duty of inquiry existed and that an inquiry was not pursued'" (quoting *Koch*, 699 F.3d at 156)); *Gander Mountain Co. v.*

9

*Islip U-Slip LLC*, 923 F. Supp. 2d 351, 364 (N.D.N.Y. 2013) (dismissing fraud claim based on two separate instances of flooding at leased property as time-barred where the plaintiff "d[id] not explain why the [first flooding] event did not cause [the] plaintiff to 'discover' [the lessor's] alleged fraud or what steps, if any, [the] plaintiff took to investigate the issue"), *aff'd*, 561 F. App'x 48 (2d Cir. 2014); *Bloch v. Pike*, No. 09-CV-5503, 2010 WL 2606355, at *3 (E.D.N.Y. May 20, 2010) (dismissing fraud claim based on transfer of the plaintiff's deceased mother's property as time-barred where the plaintiff "d[id] not allege that she made any attempt to learn about the status of her mother's interest in the property at the time her mother died or at any time thereafter"), *adopted by* 2010 WL 2606270 (E.D.N.Y. June 22, 2010). On December 9, 2010, Plaintiffs were already aware that their closing documents had characterized the Property as a four-unit residence, (*see* Compl. ¶ 10 (alleging that Stewart Title "cleared the property to close without properly matching the property details and descriptions with county land records at the time of closing")), and they were aware that the land records in fact classify the Property as a two-family residence, at the latest, when they received the Notice from DOB, (*see id.* ¶ 9). Plaintiffs point to no fact required to bring this Action that was not within their knowledge by December 9, 2010. *See Georgiou v. Panayia of Mountains Greek Orthodox Monastery, Inc.*, 792 N.Y.S.2d 667, 669 (App. Div. 2005) (affirming dismissal where the plaintiffs "waited almost seven years to commence an action predicated, in part, upon what they assert to be their forged signatures," because "the loss of and subsequent denial of access to property via an instrument that they assert bears forged signatures was sufficient to place [the] plaintiffs on notice that something was amiss with the underlying transaction"). Although Plaintiffs assert they were not aware that they had legal recourse until they consulted with knowledgeable parties in 2017, they

do not explain why they were unable to seek that same advice from third parties when they originally learned of the issue in 2010.

"To the extent that inquiry was needed to discover [Defendants'] allegedly fraudulent intent, [Plaintiffs] allege[] no facts that it conducted any inquiry [when it received the Notice] or in the two years following." *New York Univ.*, 2018 WL 1737745, at *9; *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 529 (S.D.N.Y. 2007) ("Even assuming Plaintiff has adequately pled fraudulent concealment that prevented it from discovering the scheme within the limitations period, which is dubious, it has not pled that it exercised due diligence until well after the statute of limitations had expired." (citation omitted)), *aff'd*, 328 F. App'x 695 (2d Cir. 2009); *Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 268 (S.D.N.Y. 2006) (granting motion to dismiss and declining to equitably toll statute of limitations where the plaintiff pled that it had "aggressively sought out evidence" during later contract litigation but did not plead "any investigative efforts" during the period to be equitably tolled (citation omitted)); *Prestandrea v. Stein*, 692 N.Y.S.2d 689, 691 (App. Div. 1999) ("[T]he limitation period is not tolled if a plaintiff has a reasonable basis to suspect wrong and fails to exercise due diligence to investigate the matter." (citations and quotation marks omitted)).[1] Finally, to the extent Plaintiffs seek to equitably toll the statute of limitations until they understood they had a legal cause of action, "the Second Circuit has uniformly held that equitable tolling will not be invoked unless the plaintiff was 'prevented in some extraordinary way from exercising his rights,'" *LaBoy v. Better Homes Depot, Inc.*, No. 03-CV-4271, 2004 WL

---

[1] As discussed infra note 2, Plaintiffs have not included specific allegations that any of the Defendants knowingly made false representations to induce Plaintiffs to purchase the misclassified Property, and instead rely on the fact of the misclassification to establish fraudulent intent. They therefore cannot claim to have diligently used the seven and a half years it took them to bring this Action to discover additional facts demonstrating the alleged fraud.

11

6393656, at *6 (E.D.N.Y. July 14, 2004) (alteration and some quotation marks omitted) (quoting *Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)), and Plaintiffs have not alleged that Defendants "acted to prevent plaintiffs from discovering their alleged claims," *id.* (holding equitable tolling was warranted where the defendants "collectively conspired to steer [the] plaintiffs to attorneys who would pretend to serve [the] plaintiffs but who were in fact a part of the fraudulent scheme"); *see also Willensky v. Lederman*, No. 13-CV-7026, 2015 WL 327843, at *6 n.10 (S.D.N.Y. Jan. 23, 2015) ("[T]he statute of limitations will be tolled if the plaintiff pleads, with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." (citations and quotation marks omitted)). Plaintiffs' fraud and misrepresentation claims are therefore barred by the statute of limitations.[2]

## 2. New York General Business Law § 349[3]

Construing the Complaint liberally, Plaintiffs assert a claim for violation of New York General Business Law § 349 based on (1) the alleged fraudulent characterization of the Property

---

[2] Because Plaintiffs' fraud and misrepresentation claims are time-barred, the Court need not address Defendants' arguments that Plaintiffs failed to state a claim, and that all claims asserted were released in a prior settlement. However, the Court notes that although "[a]llegations of knowledge and scienter . . . do not require great specificity because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind,'" the Complaint must nevertheless "specifically plead events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of falsity, or a reckless disregard of the truth." *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 389 (E.D.N.Y. 2002) (quoting *Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)). Should Plaintiffs file an amended complaint, they will need to allege facts sufficient to give rise to an inference that each Defendant possessed the requisite scienter.

[3] Although the Complaint cites "New York Code § 349," Plaintiffs' appear to assert a claim under New York General Business Law § 349(a), which provides that "[d]eceptive acts or

as a four-unit dwelling, (2) continuing to seek foreclosure on the Property beyond the six-year statute of limitations imposed by N.Y. C.P.L.R. § 213(4), and (3) charging Plaintiffs various fees for "BPO inspections," "title searches," and "countless exterior property inspection fees," which they allege "are not owed." (Compl. ¶ 36.)

A claim under New York General Business Law § 349 "is subject to a three-year statute of limitations." *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 459 (S.D.N.Y. 2014 (citations omitted)); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001) (same). Any § 349 claim predicated on Plaintiffs' allegations that Defendants concealed the misclassification of their Property as a two-family residence is therefore time-barred for the same reason as their fraud and misrepresentation claims. To the extent Plaintiffs are attempting to assert a § 349 claim for Defendants' continued pursuit of foreclosure actions beyond the statute of limitations, Plaintiffs have included insufficient detail to state a claim. To state a claim under § 349, "a plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (citation and quotation marks omitted). A "deceptive act or practice" is defined as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* Plaintiffs have not alleged any misrepresentation or omission other than the misclassification of the Property; they merely assert that the repeated foreclosure actions constitute "abuse and misconduct." (Compl. ¶ 36(e).) The Complaint confirms that Plaintiffs became delinquent on the Mortgage in 2009, but fails to allege any form of deception in

---

practices in the conduct of any business, trade[,] or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

connection with Defendants' subsequent pursuit of foreclosure. Plaintiffs therefore fail to state a § 349 claim based on the foreclosure actions.

Finally, to the extent Plaintiffs seek to assert a § 349 claim based on Alti-Source's collection of improper fees, Plaintiffs failed to name Alti-Source as a defendant in this Action. Even at the pleading stage, the mere allegation that Alti-Source is a "sister company" of Ocwen, (Compl. ¶ 36(g)), is insufficient to establish liability against Ocwen. "Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (citation and quotation marks omitted); *see also Pyramyd Stone Int'l Corp. v. Crosman Corp.*, No. 95-CV-6665, 1997 WL 66778, at *5 (S.D.N.Y. Feb. 18, 1997) ("Related corporations are presumed to be separate unless the parent corporation treats its subsidiary as a mere department." (citation and quotation marks omitted)). This standard is "very demanding" such that piercing the corporate veil "is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Capmark Fin. Grp. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 273 (S.D.N.Y. 2004) ("[I]t is well established that purely conclusory allegations cannot suffice to state a claim based on veil-piercing . . . ." (citations and quotation marks omitted)). "To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228

F.R.D. 508, 512 (S.D.N.Y. 2005). Determining whether veil-piercing is appropriate is a "fact specific" inquiry, and courts consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*MAG Portfolio*, 268 F.3d at 62 (citation omitted). Here, Plaintiffs plead no facts at all from which the Court could infer that Alti-Source's conduct should be attributed to Ocwen. Although the test for complete dominion over a corporation is necessarily a fact-specific inquiry, Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (citation omitted); "a formulaic recitation of the elements of a cause of action will not do," *id.* As Plaintiffs have not "nudged their claims across the line from conceivable to plausible," *id.* at 570, with respect to Ocwen's liability for Alti-Source's conduct, Plaintiffs fail to state a claim based on the allegedly improper fees and charges issued by Alti-Source, *see Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018) (dismissing breach of contract counterclaims requiring veil piercing because the counterclaimants failed to allege "lack of corporate formalities, comingling of funds, or self-dealing" (citation, alteration, and quotation marks omitted)); *EED Holdings*, 228 F.R.D. at 513 (dismissing fraud claim requiring veil piercing where the complaint failed to allege "the use of

domination to cause the injury"). For these reasons, Plaintiffs claim under New York General Business Law § 349 is dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. However, because this is the first adjudication of Plaintiffs' claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile" (citation omitted)). Should Plaintiffs choose to file an amended complaint, they must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the Complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiffs wish the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiffs fail to abide by the 30-day deadline, this action may be dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion, (*see* Dkt. No. 16), and mail a copy of this Opinion to Plaintiffs.

SO ORDERED.

Dated: July 11, 2019
       White Plains, New York

                                                  KENNETH M. KARAS
                                                  United States District Judge