UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRIS GRAHAM *and* VICTOR GRAHAM, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC MORTGAGE CORPORATION, *et al.*, <br><br> Defendants. | No. 18-CV-4196 (KMK) <br><br> OPINION & ORDER |

Appearances:

Iris Graham
Victor Graham
Mt. Vernon, NY
*Pro se Plaintiffs*

Brian S. Pantaleo, Esq.
Leah N. Jacob, Esq.
Patrick G. Broderick, Esq.
Greenberg Traurig
New York, NY & West Palm Beach, FL
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Iris Graham and Victor Graham ("Plaintiffs") bring this Action against HSBC Mortgage Corporation ("HSBC"), Ocwen Loan Servicing, LLC ("Ocwen"), and Stewart Title Agency ("Stewart Title"; collectively, "Defendants"), alleging fraud, misrepresentation, and other state law claims. (*See* Am. Compl. (Dkt. No. 26).) Before the Court is Defendants' Motion To Dismiss the Amended Complaint (the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. (Dkt. No. 33).) For the following reasons, Defendants' Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiffs' Amended Complaint and are assumed to be true for the purpose of deciding the instant Motion.

On June 19, 2006, Plaintiffs executed a mortgage (the "Mortgage") with Fremont Investment ("Fremont"), pursuant to which Fremont extended to Plaintiffs a loan of $492,000 secured by property located at 320 South 9th Avenue, Apartment 1, Mount Vernon, New York 10550 (the "Property").  (Am. Compl. ¶¶ 3, 50.)[1]  The Property was originally built in 1924 as a two-family residence, with three apartments on three levels.  (*Id.* ¶ 49.)  On or about January 26, 1925, the Department of Public Safety Bureau of Buildings (the "PSBB") issued a Certificate of Occupancy (the "Certificate") classifying the Property as a two-family dwelling.  (*Id.*)  At some point afterward, but prior to Plaintiffs occupying the Property, the Property was "illegally converted" to a four-unit dwelling "at no fault of . . . Plaintiffs."  (*Id.*)  Fremont classified the Property as a "[four]-unit dwelling" and did not disclose to Plaintiffs that the PSBB had classified the Property as a two-family dwelling.  (*Id.* ¶ 50.)  Fremont subsequently assigned its rights to the Mortgage to HSBC.  (*Id.*)  Stewart Title also approved refinancing for the Property as a four-unit dwelling, "omitting the fact" that the Property was actually classified as a two-family dwelling in the land records.  (*Id.* ¶ 52.)

On or about December 9, 2010, the Department of Buildings of the City of Mount Vernon (the "DOB") issued to Plaintiffs a "Notice of Violation #37121" (the "Notice"), due to

---

[1] The Amended Complaint is inconsistently numbered, jumping from paragraph number six to paragraph number 49, and then from paragraph number 58 to paragraph number 12.  (*See generally* Am. Compl.)  Despite these inconsistencies, the Court refers to the paragraph numbers used by Plaintiffs herein.

2

the Property having been improperly converted to a four-unit dwelling when the "land records" classified it as a two-family dwelling. (*Id.* ¶ 51.) As a result of the violation, DOB "has been fining Plaintiffs $1,000.00 per day and subjecting Plaintiffs to one year in prison." (*Id.*)

HSBC is the current owner of the loan, and Ocwen is the current servicer. (*Id.* ¶ 53.) Ocwen's broker price option ("BPO") and value inspection reports characterize the Property as a four-family dwelling. (*Id.* ¶ 54.) In 2009, Plaintiffs became "delinquent on the Mortgage," (*id.* ¶ 57), and HSBC, Ocwen, and Fremont have "brought forth multiple foreclosure actions against Plaintiffs in an attempt to foreclose on the . . . Property," (*id.* ¶ 56). Plaintiffs represent that HSBC has "failed to fully prosecute[,] and each foreclosure action has been dismissed by the Ninth Judicial District Court." (*Id.*) For example, on September 12, 2017, the "Ninth Judicial District Court" issued a "Notice to Resume Prosecution of Action and to File Notice of Issue" against HSBC "due to its neglect to prosecute." (*Id.* (quotation marks omitted).) Fremont continues to attempt to foreclose on the Property, which Plaintiffs claim is "far beyond the state's six-year statute of limitations." (*Id.* ¶ 57.) Alti-Source Solutions ("Alti-Source"), allegedly Ocwen's "sister company," has also charged Plaintiffs "multiple excessive and unsubstantiated 'junk fees' ranging from $18.00 to $110.00 for BPO inspections, $300 to $500 for title searches, and $8.00 to $15.00 for countless exterior property inspection fees." (*Id.* ¶ 58.) According to Plaintiff, Alti-Source and Ocwen have an "overlap of ownership, officers, directors, and personnel," the two entities have engaged in dealings that are "not . . . at arm's length," and in 2017, Ocwen was fined $2,000,000 by the Securities and Exchange Commission (the "SEC") for its relationship with Alti-Source "and other infractions." (*Id.* ¶ 29.)

According to Plaintiffs, they have suffered "severe emotional distress at being assessed millions of dollars in fines and facing the possibility of imprisonment," and have lost "thousands

3

of dollars in potential rental income" due to the legal issues with the Property, which have prevented Plaintiffs from renting the Property to tenants.  (*Id.* ¶ 15.)  Plaintiffs also argue that they have suffered reputational harm from "the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus."  (*Id.*)  Plaintiffs assert three causes of action against Defendants—fraud, misrepresentation, and violation of "New York Code" § 349.  (*Id.* ¶¶ 11–29.)  Construed liberally, Plaintiffs may also seek to assert a claim of slander of title or defamation.  Plaintiffs seek injunctive relief, compensatory and punitive damages, release of all liens on the Property held by Defendants, the "monetary equivalent of attorneys' fees and costs," and "[s]pecial damages to account for Plaintiffs' severe emotional distress due to Plaintiffs being subjected to hefty finds and imprisonment."  (*Id.* at 13–14.)

  B.  Procedural Background

  Because the procedural background of this Action has been summarized in this Court's previous Opinion & Order on Defendants' Motion To Dismiss the Complaint (the "2019 Opinion"), the Court supplements the procedural history of the case since the issuance of the 2019 Opinion.  (*See* Op. & Order ("2019 Op.") (Dkt. No. 25).)

  On July 12, 2019, the Court issued the 2019 Opinion dismissing Plaintiffs' claims without prejudice.  (*Id.* at 16.)  Plaintiffs were given 30 days to file an Amended Complaint.  (*Id.*)  On August 12, 2019, Plaintiffs filed their Amended Complaint.  (Am. Compl.)  On August 23, 2019, Defendants filed a letter seeking to file a motion to dismiss the Amended Complaint.  (Dkt. No. 27.)  As ordered by the Court, (Dkt. No. 28), Plaintiffs responded in a letter filed on September 6, 2019, (Dkt. No. 29).  The Court set a briefing schedule during a Pre-Motion Conference on October 4, 2019, at which Plaintiffs did not appear.  (*See* Dkt. (minute entry for

Oct. 4, 2019); Dkt. No. 32.)  On November 13, 2019, Defendants filed the instant Motion.  (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 34).)  On December 17, 2019, Plaintiffs filed a Response.  (Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Mem.") (Dkt. No. 36).)  On January 9, 2020, Defendants filed a Reply.  (Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 37).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration, citations, and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citation omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[ ] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [the complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation

and quotation marks omitted). However, when the plaintiff is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (citation and quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents that the plaintiff[ ] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted).

B.  Analysis

As with their Motion To Dismiss the Complaint, Defendants argue that Plaintiffs' claims are barred by the respective statutes of limitations, that Plaintiffs fail to state a claim, and that Plaintiffs released Defendants from liability for all of the claims in this Action in a prior settlement. (*See generally* Defs.' Mem.)

1. Statute of Limitations—Fraud and Negligent Misrepresentation

As the Court previously instructed, (2019 Op. 6–8), "[u]nder New York law, the time within which an action based upon fraud must be commenced is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it.'" *Koch*, 699 F.3d at 154 (alteration omitted) (quoting N.Y. C.P.L.R. § 213(8)); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 477 (S.D.N.Y. 2014) (same). Similarly, "New York courts apply a six year statute of limitations to negligent misrepresentation claims sounding in fraud." *United Teamster Fund*, 39 F. Supp. 3d at 477 (citation omitted).

7

A claim based on fraud "accrues as soon as 'the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.'" *Sejin Precision Indus. Co., Ltd. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 550 (S.D.N.Y. 2016) (quoting *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009)). Where a plaintiff alleges that a fraudulent statement induced that plaintiff to enter into an agreement or make a purchase, "[a] fraud claim accrues . . . at the time the defendant makes a knowingly false statement of fact with the intent to induce reliance on that statement." *Kwan v. Schlein*, 441 F. Supp. 2d 491, 504 (S.D.N.Y. 2006) (citation omitted); *see also Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (App. Div. 2007) (finding that a fraud claim accrued "when the plaintiff transferred the money in reliance upon the defendants' allegedly false representations").

The discovery rule "postpones the accrual of a cause of action from the time when the tort is complete to the time when the plaintiff has discovered sufficient facts to make him aware that he has a cause of action." *Ruso v. Morrison*, 695 F. Supp. 2d 33, 45 (S.D.N.Y. 2010) (citation and quotation marks omitted). "The statute of limitations period applicable to discovery of the violation begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Hopkinson v. Estate of Siegal*, No. 10-CV-1743, 2011 WL 1458633, at *5 (S.D.N.Y. Apr. 11, 2011) (alteration and quotation marks omitted) (quoting *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003)), *aff'd*, 470 F. App'x 35 (2d Cir. 2012). "Determining when discovery was reasonably possible turns on when Plaintiffs 'were possessed of knowledge of facts from which the fraud could be reasonably inferred.'" *Ramiro Aviles v. S & P Global, Inc.*, No. 17-CV-2987, 2019 WL 1407473, at *27 (S.D.N.Y. Mar. 28, 2019) (citation, alterations, and some quotation marks omitted) (quoting *Sargiss v. Magarelli*,

8

909 N.E.2d 573, 576 (N.Y. 2009)). "Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (citation, alteration, and quotation marks omitted). Finally, "although the triggering of inquiry notice is an issue 'often inappropriate for resolution on a motion to dismiss,' where 'the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate.'" *GVA Mkt. Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (alterations and some quotation marks omitted) (quoting *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 48 (2d Cir. 2008)).

      The Court finds that Plaintiffs have failed to cure the deficiencies in their original Complaint and that their claims remain time-barred for the reasons stated in the 2019 Opinion, (2019 Op. 8–12), "regardless [of] whether the six-year limitations period dating from the fraud or the two-year period dating from its discovery applies," *Pirri v. Cheek*, No. 19-CV-180, 2019 WL 2472438, at *4 (S.D.N.Y. June 13, 2019). First, as the Court previously explained, under the six-year statute of limitations, Plaintiffs' claims accrued, at the latest, when they were induced to purchase the Property, on June 19, 2006, and the six-year statute of limitations expired on June 19, 2012. (2019 Op. 8.) Second, under the two-year statute of limitations, "even construing the [Amended] Complaint liberally, Plaintiffs had all the information necessary to discover their causes of action on December 9, 2010, when DOB issued its Notice of Violation, and the statute of limitations expired on December 9, 2012." (*Id.*) Indeed, Plaintiffs allege that they have been

9

fined $1,000 per day since receiving the Notice, thus dooming their argument that they were unaware of their injuries at the time it was issued. (*See id.* (finding the same).) Instead, Plaintiffs filed their original Complaint on May 9, 2018, over seven years after they received the Notice and learned that the Property was improperly categorized as a four-unit dwelling.

Plaintiffs claim that they did not know of Defendants' fraudulent actions at the time the alleged misconduct occurred, and that they "conducted a reasonable investigation that a borrower/homeowner in their situation would be expected to conduct," which "did not reveal Defendants' misconduct." (Am. Compl. ¶ 16.) Instead, in 2017, Plaintiffs learned of Defendants' alleged actions when they "consulted knowledgeable third parties who conducted a separate thorough investigation." (*Id.*) Although Plaintiffs have added to their Amended Complaint the claim that they conducted their own "reasonable investigation," (*id.*), they do not explain what that investigation entailed, what they discovered, or whether it was even conducted within two years after the Notice was received, and thus have not "establish[ed] that even if [they] had exercised reasonable diligence, [they] could not have discovered the basis for [their] fraud claim," *Aozora Bank, Ltd. v. Credit Suisse Grp.*, 40 N.Y.S.3d 407, 409 (App. Div. 2016), *leave to appeal denied*, 74 N.E.3d 676 (N.Y. 2017); *see also N.Y Univ. v. Factory Mut. Ins. Co.*, No. 15-CV-8505, 2018 WL 1737745, at *9 (S.D.N.Y. Mar. 27, 2018) ("To the extent that inquiry was needed to discover [the defendants'] allegedly fraudulent intent, [the plaintiffs] allege[] no facts that [they] conducted any inquiry . . . in the two years following [receipt of the notice]."); *Willensky v. Lederman*, No. 13-CV-7026, 2015 WL 327843, at *9 n.17 (S.D.N.Y. Jan. 23, 2015) (noting that "to the extent that there was relevant information for [the] [p]laintiff to ascertain . . . it [was] unclear why [the] [p]laintiff's 'internet investigation' failed to expose [it]"); *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 364 (N.D.N.Y. 2013)

10

(dismissing fraud claim based on two separate instances of flooding at leased property as time-barred where the plaintiff "d[id] not explain why the [first flood] did not cause [the] plaintiff to 'discover' [the lessor's] alleged fraud or what steps . . . [the] plaintiff took to investigate the issue"), *aff'd*, 561 F. App'x 48 (2d Cir. 2014); *Butala v. Agashiwala*, 916 F. Supp. 314, 320 (S.D.N.Y. 1996) (rejecting a fraudulent concealment claim where the "[c]omplaint [was] utterly lacking in the details of what steps the plaintiffs took to investigate the condition of their investment once they were on inquiry notice of the probability they had been defrauded" (citations omitted)).

Further, despite generally stating that their own investigation "did not reveal Defendants' misconduct," (Am. Compl. ¶ 16), "Plaintiffs point to no fact required to bring this Action that was not within their knowledge by December 9, 2010," (2019 Op. 10 (citation omitted)), when Plaintiffs, at the latest, became aware that land records classified the Property as a two-family residence, (Am. Compl. ¶¶ 50–52). As this Court previously instructed, "'positive knowledge of fraud is not required to commence the running of the two-year [s]tatute of [l]imitations.'" (2019 Op. 9 (quotation marks omitted) (quoting *Watts v. Exxon Corp.*, 594 N.Y.S.2d 443, 444 (App. Div. 1993)). Instead, "for the purpose of determining when the statute of limitations begins to run, the absence of conclusive evidence of actual knowledge is only the beginning of the inquiry, since the statutory period does not await the leisurely discovery of the full details of the alleged scheme." *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 234 (N.D.N.Y. 2009) (citation, alteration, and quotation marks omitted), *reconsideration denied*, 2009 WL 3672105 (N.D.N.Y. 2009). Plaintiffs merely must have received sufficient information to place them "on notice that something was amiss," *Georgiou v. Panayia of Mountains Greek Orthodox Monastery, Inc.*, 792 N.Y.S.2d 667, 669 (App. Div. 2005), and "[k]nowledge will be imputed to a plaintiff claiming

11

fraud if, with reasonable diligence, [the] plaintiff could have discovered the fraud prior to its actual discovery," *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 258 (S.D.N.Y. 2005) (citation and emphasis omitted).

Given that Plaintiffs do not specifically allege that Defendants knowingly made false representations to induce Plaintiffs to purchase the Property as a four-dwelling unit, instead relying on the fact of the misclassification to establish fraudulent intent, "[t]hey . . . cannot claim to have diligently used the seven and a half years it took them to bring this Action to discover additional facts demonstrating the alleged fraud," (2019 Op. 11 n.1), particularly when Plaintiffs do not explain what facts they did discover during their own investigation, how they were impeded in discovering the misclassification, and why they were unable to seek advice from "knowledgeable third parties" earlier than 2017, (*see id.* at 10–11). *See also Hemmerdinger Corp. v. Ruocco*, 976 F. Supp. 2d 401, 408 (E.D.N.Y. 2013) (noting that "the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the plaintiff's investigative efforts" (citation and quotation marks omitted)); *Aozora Bank*, 40 N.Y.S.3d at 410 (noting that although the plaintiff ultimately conducted an investigation into alleged misconduct, "it offer[ed] no explanation why it could not have performed that investigation earlier" (citation omitted)). Further, as with last time, Plaintiffs argue that the Notice could not have put them on notice of Defendants' alleged actions, as they "are laymen and were unaware of their legal rights until they consulted knowledgeable third[]parties in 2017." (Pls.' Mem. 7 n.1.) However, "the relevant inquiry is not when Plaintiffs became aware that they had a legal cause of action, but rather when they had sufficient operative facts that indicate that further inquiry is necessary." (2019 Op. 9 (quotation marks omitted) (collecting cases).)

Plaintiffs assert that "[e]quitable tolling should be invoked because Plaintiffs were prevented from exercising their rights due to the fact that they are laymen who would not have discovered or understood that the [four]-unit . . . Property was classified as a two[-]family dwelling by the PSBB." (Am. Compl. ¶ 16.) However, as noted previously, "the Second Circuit has uniformly held that equitable tolling will not be invoked unless . . . [P]laintiff[s] w[ere] 'prevented in some extraordinary way from exercising [their] rights.'" *LaBoy v. Better Homes Depot, Inc.*, No. 03-CV-4271, 2004 WL 6393656, at *6 (E.D.N.Y. July 14, 2004) (alteration and quotation marks omitted) (ultimately quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)). Here, Plaintiffs have not alleged that Defendants "acted to prevent [them] from discovering their alleged claims," *id.* (holding that equitable tolling was warranted where the defendants "collectively conspired to steer [the] plaintiffs to attorneys who would pretend to serve [the] plaintiffs but who were in fact a part of the fraudulent scheme"), and Plaintiffs' pro se, or "laymen," status is, standing alone, insufficient to justify equitable tolling, *see Driscoll v. Rudnick*, No. 13-CV-336, 2014 WL 1747027, at *2 (W.D.N.Y. Apr. 28, 2014) (noting that although the plaintiff was a "layman" and "may not have known or understood when his claims accrued . . . , mere ignorance of the law is not a basis for equitably tolling the statute of limitations" (citation omitted)); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (clarifying that with respect to equitable tolling, the Second Circuit has "made it clear that [it] had in mind a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action" (emphasis omitted) (citations and quotation marks omitted)); *DeSuze v. Carson*, No. 18-CV-180, 2020 WL 1066760, at *9 (E.D.N.Y. Mar. 5, 2020) (noting that "equitable tolling may not be premised on pro se status, or ignorance of the right to bring a claim" (alterations and quotation marks omitted) (quoting

13

*Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017)), *filing appeal*, No. 20-1141 (2d Cir.); *Stevenson v. N.Y.C. Dep't of Corr.*, No. 09-CV-5274, 2011 WL 13175927, at *4 (E.D.N.Y. July 11, 2011) ("While courts generally treat pro se complaints more liberally, pro se status does not by itself invoke equitable tolling without additional justification showing extraordinary circumstances." (collecting cases)), *aff'd*, 489 F. App'x 517 (2d Cir. 2012). Plaintiffs' claims of fraud and misrepresentation are therefore barred by the statute of limitations. As such, the Court declines to address Defendants' arguments that Plaintiffs have failed to state a claim, and that their claims were released in a prior settlement. (*See* Defs.' Mem. 10–13.)

### 2. New York General Business Law § 349[2]

Liberally construed, Plaintiffs assert claims for violations of New York General Business Law ("GBL") § 349 based on the classification of the Property as a four-unit residence, continued attempts to foreclose on the Property after the six year statute of limitations imposed by New York Civil Practice Law and Rules ("CPLR") § 213(4), and charges to Plaintiffs of multiple "junk fees" for "BPO inspections," "title searches," and "countless exterior property inspection fees," which Plaintiffs represent are misrepresented and not owed. (Am. Compl. ¶ 26.) For similar reasons stated in the 2019 Opinion, Plaintiffs' GBL § 349 claim based on classification of the Property is barred by the statute of limitations, and Plaintiffs have failed to state a claim under GBL § 349 with respect to their other allegations.

Because a claim under GBL § 349 "is subject to a three-year statute of limitations," *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (collecting cases),

---

[2] As the Court previously noted, (2019 Op. 12 n.3), although the Amended Complaint cites "New York Code § 349," Plaintiffs appear to assert a claim under New York General Business Law ("GBL") § 349. (*See id.*) The Court therefore analyzes this claim as one under GBL § 349.

"[a]ny § 349 claim predicated on Plaintiffs' allegations that Defendants concealed the misclassification of their Property as a two-family residence is therefore time-barred for the same reason as their fraud and misrepresentation claim," (2019 Op. 13). And, as with the initial Complaint, Plaintiffs have included "insufficient detail" to state a claim under GBL § 349 with respect to Defendants' continued pursuit of foreclosure actions beyond the statute of limitations. (*Id.*) As the Court previously explained, to state a claim under GBL § 349, "a plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that [the] plaintiff has been injured by reason thereof." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (citation and quotation marks omitted). A "deceptive act or practice" is defined as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citation and quotation marks omitted). Plaintiffs' Amended Complaint contains no allegations of misrepresentations or omissions other than the misclassification of the Property. Instead, Plaintiffs continue to "merely assert that the repeated foreclosure actions constitute 'abuse and misconduct.'" (2019 Op. 13 (record citation omitted); *see also* Am. Compl. ¶ 26.) The Amended Complaint "fails to allege any form of deception in connection with Defendants' . . . pursuit of foreclosure," and Plaintiffs therefore fail to state a claim under GBL § 349 based on the foreclosure actions. (2019 Op. 13–14.)

Lastly, Plaintiffs have not named Alti-Source as a defendant in this Action, alleging instead that Alti-Source is a "sister company" to Ocwen, (Am. Compl. ¶ 26), and that the two companies have an "overlap of ownership, officers, directors, and personnel" and do not engage in arms' length dealing, (*id.* ¶ 29). In support of these allegations, Plaintiffs note that in 2017, Ocwen was fined $2 million by the SEC for its "relationship with Alti[-][S]ource, and other

15

infractions." (*Id.*) The Court previously instructed that "[u]nder New York law, a court may pierce the corporate veil where [(]1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and [(]2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." (2019 Op. 14 (quotation marks omitted) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001)).) This standard is "very demanding" such that piercing the corporate veil "is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Capmark Fin. Grp. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) ("[I]t is well established that purely conclusory allegations cannot suffice to state a claim based on veil-piercing . . . ." (citations and quotation marks omitted)). "To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (citations omitted). Determining whether veil-piercing is appropriate is a "fact specific" inquiry, and courts consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address[,] and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*MAG Portfolio*, 268 F.3d at 63 (citation omitted). Although the test for complete dominion over a corporation is a fact-specific inquiry, here, Plaintiffs have failed to "'nudge[] their claims

16

across the line from the conceivable to plausible' with respect to Ocwen's liability for Alti-Source's conduct," as Plaintiffs' allegations are conclusory, and merely restate some of the factors to be considered by the Court.  (2019 Op. 15.)  Additionally, Plaintiffs' allegations of Ocwen's SEC fine due to its relationship with Alti-Source are too general to establish, inter alia, a "lack of corporate formalities, comingling of funds, or self-dealing." *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018) (citation, alteration, and quotation marks omitted).  Further, Plaintiffs fail to plead the "causative element"—that Defendants "use[d] . . . domination [of Alti-Source] to cause the injury . . . [the omission of] which results in the dismissal of the corporate veil-piercing allegation." *EED Holdings*, 228 F.R.D. at 513; *cf. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) (holding that the plaintiff sufficiently alleged a basis for piercing the corporate veil when the complaint stated that the defendants "exercised . . . complete domination to abuse the corporate form in a manner that resulted in injury to the plaintiff, namely by using assets for personal rather than corporate purposes and by placing assets beyond the reach of creditors" (record citation omitted)).  For these reasons, Plaintiffs' claim under GBL § 349 is also dismissed.

### 3.  Slander of Title

Construed liberally, Plaintiffs appear to have added allegations to the Amended Complaint that they have been slandered through the continuous "illegitimate foreclosure proceedings," which have been "attributed to them and reported to credit reporting agencies and bureaus." (Am. Compl. ¶ 15.)  Thus, Plaintiffs' claims appear to be in the nature of slander of title or defamation.  *See Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 429 (S.D.N.Y. 2010) (construing the plaintiff's claims of wrongful foreclosure and reporting of that foreclosure to

credit reporting agencies as a "tort claim in the nature of slander of title or defamation" (collecting cases))*; see also Markowitz v. Republic Nat'l Bank of N.Y.*, 651 F.2d 825, 827–28 (2d Cir. 1981) (finding that, under New Jersey law, the plaintiff's claim that the defendant wrongfully claimed a lien under a mortgage "must be construed as one for slander of title" (citations omitted)); *Ferber v. Citicorp Mortgage, Inc.*, No. 94-CV-3038, 1996 WL 46874, at \*2 (S.D.N.Y. Feb. 6, 1996) (noting that the plaintiffs' defamation claim was based on the defendant reporting to credit bureaus that the plaintiffs had defaulted on their loans and that foreclosure proceedings had been commenced). However, Defendants do not address this potential claim in their Memoranda, and, accordingly, the Court does not address it further herein. (*See generally* Defs.' Mem.) To the extent Plaintiffs attempt to bring a claim of slander of title or defamation, they may do so in a second amended complaint, and Defendants may address the claim in any future motion practice.

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted. Given Plaintiffs' pro se status and request to amend the Amended Complaint, (Pls.' Mem. 11), Plaintiffs may have a final opportunity to do so. *See* Fed. R. Civ. P. 15(a) (noting that leave to amend a complaint should be "freely give[n] . . . when justice so requires"). The Court notes, however, that Plaintiffs have already had a second bite at the apple with their Amended Complaint, and therefore instructs Plaintiffs to include within their second amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiffs wish the Court to consider. Plaintiffs are advised that the second amended complaint will replace, not supplement, all prior complaints and filings. The second amended complaint must contain all of the claims,

factual allegations, and exhibits that Plaintiffs wish the Court to consider. If Plaintiffs fail to abide by the 30-day deadline, their claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 33), and to mail a copy of this Opinion & Order to Plaintiffs.

SO ORDERED.

DATED: September 23, 2020
White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE