UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IRIS GRAHAM *and* VICTOR GRAHAM,

                                        Plaintiffs,

        v.

HSBC MORTGAGE CORPORATION, *et al.*,

                                        Defendants.

No. 18-CV-4196 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Iris Graham
Victor Graham
Mt. Vernon, NY
*Pro se Plaintiffs*

Brian S. Pantaleo, Esq.
Leah N. Jacob, Esq.
Patrick G. Broderick, Esq.
Greenberg Traurig, LLP
New York, NY & West Palm Beach, FL
*Counsel for Defendants HSBC Mortgage Corporation & Ocwen Loan Servicing, LLC*

KENNETH M. KARAS, United States District Judge:

        Plaintiffs Iris Graham and Victor Graham ("Plaintiffs") bring this pro se Action against

HSBC Mortgage Corporation ("HSBC"), Ocwen Loan Servicing, LLC ("Ocwen"), and Stewart

Title Agency ("Stewart Title"), alleging fraud, misrepresentation, and other state law claims.

(*See* Second Am. Compl. ("SAC") (Dkt. No. 40).)  Before the Court is Defendants HSBC and

Ocwen's (together, "Defendants") Motion To Dismiss Plaintiffs' Second Amended Complaint

(the "Motion"), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (Defs.' Not. of Mot.

(Dkt. No. 47).)  For the following reasons, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Second Amended Complaint and are

assumed to be true for the purpose of deciding the instant Motion.

On June 19, 2006, Plaintiffs executed a mortgage (the "Mortgage") with Fremont

Investment ("Fremont"), pursuant to which Fremont extended to Plaintiffs a loan of $492,000

secured by property located at 320 South 9th Avenue, Apartment 1, Mount Vernon, New York

10550 (the "Property").  (SAC ¶¶ 3, 50.)[2]  The Property was originally built in 1924 as a two-

family residence, with three apartments on three levels.  (*Id.* ¶ 49.)  On or about January 26,

1925, the Department of Public Safety Bureau of Buildings ("PSBB") issued a Certificate of

Occupancy (the "Certificate") classifying the Property as a two-family dwelling.  (*Id.*)  At some

point afterward, but prior to Plaintiffs occupying the Property, the Property was "illegally

converted" to a four-unit dwelling "at no fault of . . . Plaintiffs."  (*Id.*)  Fremont classified the

Property as a "[four]-unit dwelling" and did not disclose to Plaintiffs that the PSBB had

classified the Property as a two-family dwelling.  (*Id.* ¶ 50.)  Fremont subsequently assigned its

rights to the Mortgage to HSBC.  (*Id.*)  Stewart Title also approved refinancing for the Property

---

[1] Defendant Stewart Title has not appeared in this Action and has not joined Defendants
HSBC and Ocwen's Motion.  For brevity, the Court will refer to Defendants HSBC and Ocwen
only as "Defendants" herein.

[2] As with Plaintiffs' First Amended Complaint, (Dkt. No. 26), the Second Amended
Complaint is inconsistently numbered, jumping from paragraph number 6 to paragraph number
49, and then from paragraph number 58 to paragraph number 7, (*see generally* SAC).  Despite
these inconsistencies, the Court refers to the paragraph numbers used by Plaintiffs herein.

as a four-unit dwelling, "omitting the fact" that the Property was actually classified as a two-family dwelling in the land records.  (*Id.* ¶ 52.)

On or about December 9, 2010, the Department of Buildings of the City of Mount Vernon (the "DOB") issued to Plaintiffs a "Notice of Violation #37121" (the "Notice"), due to the Property having been improperly converted to a four-unit dwelling when the "land records" classified it as a two-family dwelling.  (*Id.* ¶ 51.)  As a result of the violation, DOB "has been fining Plaintiffs $1,000.00 per day and subjecting Plaintiffs to one year in prison."  (*Id.*)

HSBC is the current owner of the loan, and Ocwen is the current servicer.  (*Id.* ¶ 53.) Ocwen's broker price option ("BPO") and value inspection reports characterize the Property as a four-family dwelling.  (*Id.* ¶ 54.)  In 2009, Plaintiffs "became delinquent on the Mortgage," (*id.* ¶ 57), and HSBC, Ocwen, and Fremont have "brought forth multiple foreclosure actions against Plaintiffs in an attempt to foreclose on the . . . Property," (*id.* ¶ 56).  Plaintiffs represent that HSBC has "failed to fully prosecute[,] and each foreclosure action has been dismissed by the Ninth Judicial District Court."  (*Id.*)  For example, on September 12, 2017, the "Ninth Judicial District Court" issued a "Notice to Resume Prosecution of Action and File Note of Issue" against HSBC "due to its neglect to prosecute."  (*Id.* (quotation marks omitted).)  Fremont continues to attempt to foreclose on the Property, which Plaintiffs claim is "far beyond the state's six-year statute of limitations."  (*Id.* ¶ 57.)  Alti-Source Solutions ("Alti-Source"), allegedly Ocwen's "sister company," has also charged Plaintiffs "multiple excessive and unsubstantiated 'junk fees' ranging from $18.00 to $110.00 for BPO inspections, $300 to $500 for title searches, and $8.00 to $15.00 for countless exterior property inspection fees."  (*Id.* ¶ 58.)  According to Plaintiffs, Alti-Source and Ocwen have an "overlap of ownership, officers, directors, and personnel," the two entities have engaged in dealings that are "not . . . at arm's length," and in 2017, Ocwen was

3

fined $2,000,000 by the Securities and Exchange Commission (the "SEC") for its relationship with Alti-Source "and other infractions." (*Id.* ¶ 29.)

According to Plaintiffs, they have suffered "severe emotional distress at being assessed millions of dollars in fines and facing the possibility of imprisonment," and have lost "thousands of dollars in potential rental income" due to the legal issues with the Property, which have prevented Plaintiffs from renting the Property to tenants. (*Id.* ¶¶ 15, 23, 27.) Plaintiffs also argue that they have suffered reputational harm from "the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus." (*Id.*) Plaintiffs assert three causes of action against Defendants: fraud, misrepresentation, and violation of "New York Code" § 349. (*Id.* ¶¶ 7–29.) Construed liberally, Plaintiffs may also seek to assert a claim of slander of title or defamation. (*Id.* ¶¶ 15, 23, 27.) Plaintiffs seek injunctive relief, compensatory and punitive damages, release of all liens on the Property held by Defendants, the "monetary equivalent of attorney's fees and costs," and "[s]pecial damages to account for Plaintiffs' severe emotional distress due to Plaintiffs being subjected to hefty fines and imprisonment." (*Id.* at 15.)

    B.  Procedural Background

Because the procedural background of this Action has been summarized in this Court's previous Opinion & Order on Defendants' Motion To Dismiss the Complaint (the "2019 Opinion") and Opinion & Order on Defendants' Motion To Dismiss the First Amended Complaint (the "2020 Opinion"), this Court supplements the procedural history of the case since the issuance of the 2020 Opinion. (*See* Op. & Order ("2019 Op.") 3 (Dkt. No. 25); Op. & Order ("2020 Op.") 4–5 (Dkt. No. 38).)

4

On September 23, 2020, the Court issued the 2020 Opinion dismissing the Plaintiffs' claims without prejudice, providing Plaintiffs with a "final opportunity" to amend their complaint. (2020 Op. 18.) Plaintiffs were given 30 days to file a Second Amended Complaint. (*Id.* at 19.) On November 23, 2020—after seeking and receiving an additional 30 days to amend the First Amended Complaint, (Dkt. No. 39)—Plaintiffs filed their Second Amended Complaint, (Dkt. No. 40). On December 7, 2020, Defendants filed a motion to dismiss the Second Amended Complaint, (Defs.' Not. of Mot. (Dkt. No. 41); Defs.' Mem. of Law in Supp. of Mot. (Dkt. No. 42)), which the Court sua sponte dismissed without prejudice on December 8, 2020 for failure to comply with the Court's individual rules requiring pre-motion conferences, (Dkt. No. 43). On December 9, 2020, Defendants filed a letter seeking to file a motion to dismiss the Second Amended Complaint, (Dkt. No. 44), and the Court set a briefing schedule, (Dkt. No. 45). On January 21, 2021, Defendants filed the instant Motion. (Not. of Mot. (Dkt. No. 47); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 48); Decl. of Brian S. Pantaleo in Supp. of Mot. To Dismiss (Dkt. No. 49).) On February 5, 2021, Plaintiffs filed a Response. (Pls.' Opp'n to Defs.' Mot. To Dismiss ("Pls.' Mem.") (Dkt. No. 51).) On March 8, 2021, Defendants filed a Reply in the form of a supplemental declaration. (Reply Decl. of Brian Pantaleo in Supp. of Mot. To Dismiss (Dkt. No. 53).)[3]

---

[3] Defendants appear to have filed their Reply on the docket twice. (*See* Dkt. Nos. 52, 53.) The two filings are substantively identical; however, the first filing appears to have omitted several pages from both of the attached exhibits. (*Compare* Dkt. Nos. 52-1 *and* 52-2 *with* Dkt. Nos. 53-1 *and* 53-2.) As such, the Court will assume Defendants' first filing was in error and consider only the second filing.

## II. Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 678 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the

factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2008)

(per curiam); *see also Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citing *Rothstein v. UBS

AG*, 708 F.3d 82, 94 (2d Cir. 2013)).  Where, as here, a plaintiff proceeds pro se, the Court must

"construe[] [the complaint] liberally and interpret[] [it] to raise the strongest arguments that it

suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation

marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a

pro se party from compliance with relevant rules of procedural and substantive law." *Bell v.

Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, [to facts] in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

However, when the plaintiff is pro se, the Court may consider "materials outside the complaint to

the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*,

No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks

omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v.

Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted),

documents "contained in . . . other court filings," *Ceara v. Deacon*, 68 F. Supp. 3d 402, 405

(S.D.N.Y. 2014) (quotation marks omitted), and "documents that the plaintiff[] either possessed

or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220

F.3d 81, 88 (2d Cir. 2000).

    B.  Analysis

      As with their prior two Motions To Dismiss, Defendants argue that Plaintiffs' claims are

barred by the respective statutes of limitations, that Plaintiffs fail to state a claim, and that

Plaintiffs released Defendants from liability for all of the claims in this Action in a prior

settlement.  (*See generally* Defs.' Mem.)

          1.  Fraud and Negligent Misrepresentation

      As the Court has twice previously instructed, (2019 Op. 6–8; 2020 Op. 7–9), "[u]nder

New York law, the time within which an action based upon fraud must be commenced is 'the

greater of six years from the date the cause of action accrued or two years from the time the

plaintiff discovered the fraud, or could with reasonable diligence have discovered it.'"  *Koch v.

Christie's Int'l PLC*, 699 F.3d 141, 154 (2d Cir. 2012) (quoting N.Y. C.P.L.R. § 213(8))

(alteration omitted); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39

F. Supp. 3d 461, 477 (S.D.N.Y. 2014) (same).  Similarly, "New York courts apply a six year

statute of limitations to negligent misrepresentation claims sounding in fraud."  *United Teamster

Fund*, 39 F. Supp. 3d at 477; *see also Von Hoffman v. Prudential Ins. Co. of Am.*, 202

F. Supp. 2d 252, 263 (S.D.N.Y. 2002) ("In New York, a claim for negligent misrepresentation

based on the same facts as a claim for fraud is governed by the six-year statute of limitation for

fraud under [N.Y.] C.P.L.R. § 213(8).").

      A claim based on fraud "accrues as soon as 'the claim becomes enforceable, i.e., when all

elements of the tort can be truthfully alleged in a complaint."  *Sejin Precision Indus. Co. v.

Citibank, N.A.*, 235 F. Supp. 3d 542, 550 (S.D.N.Y. 2016) (quoting *IDT Corp. v. Morgan Stanley

Dean Witter & Co.*, 907 N.E.2d 268, 273 (N.Y. 2009))).  Where, as here, a plaintiff alleges that a

fraudulent statement induced that plaintiff to enter into an agreement or make a purchase, "[a] fraud claim accrues . . . at the time the defendant makes a knowingly false statement of fact with the intent to induce reliance on that standard." *Kwan v. Schlein*, 441 F. Supp. 2d 491, 504 (S.D.N.Y. 2006); *see also, e.g.*, *Ingrami v. Rovner*, 847 N.Y.S.2d 132, 134 (App. Div. 2007) (finding that a fraud claim accrued "when the plaintiff transferred the money in reliance upon the defendants' allegedly false representations").

The discovery rule, applicable to actions involving allegations of fraud, "postpones the accrual of a cause of action from the time when the tort is complete to the time when the plaintiff has discovered sufficient facts to make him aware that he has a cause of action." *Ruso v. Morrison*, 695 F. Supp. 2d 33, 45 (S.D.N.Y. 2010) (quotation marks omitted); *see also Von Hoffmann*, 202 F. Supp. 2d at 263–64 (applying two-year limitations period running from the alleged discovery of the negligent misrepresentation where the claim was "based on the same facts as a claim for fraud"). "The statute of limitations period applicable to discovery of the violation begins to run after the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge." *Hopkinson v. Estate of Siegal*, No. 10-CV-1743, 2011 WL 1458633, at *5 (S.D.N.Y. Apr. 11, 2011) (alteration omitted) (quoting *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003)), *aff'd*, 470 F. App'x 35 (2d Cir. 2012). "Determining when discovery was reasonably possible turns on when Plaintiffs 'were possessed of knowledge of facts from which the fraud could be reasonably inferred.'" *Ramiro Aviles v. S & P Global, Inc.*, No. 17-CV-2987, 2019 WL 1407473, at *27 (S.D.N.Y. Mar. 28, 2019) (alterations omitted) (quoting *Sargiss v. Magarelli*, 909 N.E.2d 573, 576 (N.Y. 2009)). "Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that

9

he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007) (citation and alteration omitted).  Finally, "although the triggering of inquiry notice is an issue 'often inappropriate for resolution on a motion to dismiss,' where 'the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint, resolution of the issue on a motion to dismiss is appropriate.'" *GVA Mkt. Neutral Master Ltd. v. Vergas Cap. Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (alterations omitted) (quoting *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 48 (2d Cir. 2008)).

The Court finds that Plaintiffs have failed to cure the deficiencies in their First Amended Complaint—just as this Court previously found that Plaintiffs failed to cure the deficiencies in their original Complaint—and that their claims remain time-barred for the reasons stated in the 2019 and 2020 Opinions, (*see* 2019 Op. 8–12; 2020 Op. 9–14), "regardless [of] whether the six-year limitations period dating from the fraud or the two-year period dating from its discovery applies," *Pirri v. Cheek*, No. 19-CV-180, 2019 WL 2472438, at *4 (S.D.N.Y. June 13, 2019). First, as the Court explained in 2019 and 2020, under the six-year statute of limitations, Plaintiffs' claims accrued, at the latest, when they were induced to purchase the Property on June 19, 2006, and the six-year statute of limitations expired on June 19, 2012.  (*See* 2019 Op. 8; *see also* 2020 Op. 9.)  Second, under the two-year statute of limitations, "even construing the [Second Amended] Complaint liberally, Plaintiffs had all the information necessary to discover their causes of action on December 9, 2010, when DOB issued its Notice of Violation, and the statute of limitations expired on December 9, 2012." (2019 Op. 8; *see also* 2020 Op. 9.)  Indeed,

Plaintiffs allege that they have been fined "$1,000.00 per day and subject[ed] . . . to one year in prison," (SAC ¶ 51), since receiving the Notice, dooming their argument that they were unaware of their injuries at the time the Notice was issued, (*see* 2019 Op. 8 (finding the same); 2020 Op. 9–10 (finding the same)).  Instead, Plaintiffs filed their original complaint on May 9, 2018, over seven years after they received the Notice and learned that the Property was improperly categorized as a four-unit dwelling, and nearly 12 years after Plaintiffs were allegedly fraudulently induced by Defendants into purchasing the Property.

Plaintiffs claim that they "were unaware of Defendants' fraudulent actions at the time the fraudulent misconduct occurred" and only learned of Defendants' alleged actions in 2017, when they "consulted knowledgeable third parties" who conducted "[an] investigation."  (SAC ¶¶ 16, 24.)  Pointing to these facts, Plaintiffs argue that the statute of limitation was tolled until 2017, "when Plaintiffs *discovered* the existence of [their] claims."  (Pls.' Mem. 7–8 & n.1.)  In the face of similar allegations and arguments, the Court has twice held that Plaintiffs failed to plead facts which would merit application of the discovery rule to toll the statute of limitations until 2017, (2019 Op. 9–11; 2020 Op. 10–11), and while Plaintiffs have added certain additional factual claims to their Second Amended Complaint in an attempt to bolster this argument, these additional allegations cannot save Plaintiffs' Second Amended Complaint from dismissal.

In Plaintiffs' First Amended Complaint, they alleged that at some point prior to Plaintiffs' "consult[ation] [with] knowledgeable third parties" in 2017, "Plaintiffs conducted a reasonable investigation that a borrower/homeowner in their situation would be expected to conduct," which "did not reveal Defendants' misconduct."  (First Am. Compl. ("FAC") ¶¶ 16, 24 (Dkt. No. 26).)  In dismissing Plaintiffs' First Amended Complaint, the Court explained that Plaintiffs "[did] not explain what that investigation entailed, what they discovered, or whether [the investigation] was

even conducted within two years after the Notice was received," and thus, that Plaintiffs failed to

"'establish that even if [they] had exercised reasonable diligence, [they] could not have

discovered the basis for [their] fraud claim.'"  (2020 Op. 10 (quoting *Aozora Bank, Ltd. v. Credit*

*Suisse Grp.*, 40 N.Y.S.3d 407, 410 (App. Div. 2016), *leave to appeal denied*, 74 N.E.3d 676

(N.Y. 2017)).)  While Plaintiffs now allege that their "investigation" included "consulting with

what Plaintiffs[] deemed to be knowledgeable parties (i.e., Fremont . . . , Ocwen, and Stewart

Title), and a standard review of documents pertaining to the . . . Property's county records as a

reasonable layperson would," (SAC ¶¶ 16, 24), Plaintiffs fail to address the issues identified in

the Court's 2020 Opinion and thus, continue to fail to demonstrate that their fraud claim could

not have been discovered prior to 2017 even with reasonable diligence, *see Aozora Bank*, 40

N.Y.S.3d at 410.

　　　　First, Plaintiffs appear to have misunderstood the Court's 2020 determination that

Plaintiffs' First Amended Complaint failed to allege that the Plaintiffs' pre-2017 "investigation"

had been conducted "within two years after the Notice was received."  (2020 Op. 10.)  This

information is relevant because, as the Court explained in both 2019 and 2020, "'positive

knowledge of fraud is not required to commence the running of the two-year [s]tatute of

[l]imitations.'"  (2020 Op. 11 (citing 2019 Op. 9).)  Rather, "Plaintiffs merely must have

received sufficient information to place them 'on notice that something was amiss,' and

'[k]nowledge will be imputed to a plaintiff claiming fraud if, with reasonable diligence, [the]

plaintiff could have discovered the fraud prior to its actual discovery.'"  (2020 Op. 11–12 (first

quoting *Georgiou v. Panayia of Mountains Greek Orthodox Monastery, Inc.*, 792 N.Y.S.2d 667,

669 (App. Div. 2005), and then quoting *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380

F. Supp. 2d 250, 258 (S.D.N.Y. 2005)).)  Plaintiffs cannot credibly dispute that the receipt of the

Notice from BOP on December 9, 2010 identifying the issue should have alerted them that

"something was amiss," particularly because BOP began "fining Plaintiffs $1,000.00 per day and

subjecting Plaintiffs to one year in prison" after issuing the Notice, (SAC ¶ 51).  Thus, Plaintiffs

can only avoid the imputation of knowledge on that date (and thus, the starting gun on the statute

of limitations) if they demonstrate that they conducted a reasonably diligent inquiry that did not

reveal the existence of their claims before the presumptive two-year statute of limitations ran out.

*See Hemmerdinger Corp. v. Ruocco*, 976 F. Supp. 2d 401, 408–09 (E.D.N.Y. 2013) (noting that

"the date on which knowledge of a fraud will be imputed to a plaintiff can depend on the

plaintiff's investigative efforts," and therefore, "if the plaintiff makes no inquiry once the duty to

inquire arises, knowledge will be imputed as of the date the duty arose" (alteration omitted)); *cf.*

*New York Univ. v. Factory Mut. Ins. Co.*, No. 15 Civ. 8505, 2018 WL 1737745, at *9 (S.D.N.Y.

Mar. 27, 2018) (dismissing fraud claim as untimely where "[t]o the extent that inquiry was

needed to discover [the defendant's] allegedly fraudulent intent, [the plaintiff] alleges no facts

that it conducted any inquiry at that time or in the two years following"); *Gander Mountain Co.*

*v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 364 (N.D.N.Y. 2013) (dismissing fraud claim based on

two separate instances of flooding at leased property as time-barred where the plaintiff "[d]id not

explain why the [first flood] did not cause [the] plaintiff to 'discover' [the lessor's] alleged fraud

or what steps . . . [the] plaintiff took to investigate the issue"), *aff'd*, 561 F. App'x 48 (2d Cir.

2014); *Butala v. Agashiwala*, 916 F. Supp. 314, 320 (S.D.N.Y. 1996) (rejecting a fraudulent

concealment claim where the "[c]omplaint [was] utterly lacking in the details of what steps the

plaintiffs took to investigate the condition of their investment once they were on inquiry notice

of the probability they had been defrauded").

In amending their First Amended Complaint, however, Plaintiffs failed to include an allegation that their pre-2017 "investigation" was conducted "within two years after the Notice was received," (2020 Op. 10); instead, Plaintiffs included an allegation that the 2017 "investigation" was conducted by "knowledgeable third parties" "within [two] years of the Notice being received," (SAC ¶¶ 16, 24). This new allegation does not address the issue raised by the Court in 2020 and described above, and further, is facially inaccurate: Plaintiffs allege that this second "investigation" was conducted in 2017, or *seven* years after Plaintiffs received the Notice on December 9, 2010.[4]

Second, even assuming Plaintiffs' "investigation" did take place within two years after the Notice was received, Plaintiffs still have not explained with any specificity what that investigation entailed, and thus cannot demonstrate that this "investigation" constituted reasonable diligence. Plaintiffs allege only that their investigation "included consulting with what Plaintiffs[] deemed to be knowledgeable parties" and "a standard review of documents pertaining to the . . . Property's county records as a reasonable layperson would." (SAC ¶¶ 16, 24.) However, simply alleging that Plaintiffs' "investigation" was "standard" or "reasonable" cannot satisfy Plaintiffs' burden. *See Iqbal*, 556 U.S. at 678 (explaining that a complaint

---

[4] While Plaintiffs argue for a third time that the Notice could not have put them on notice of Defendants' alleged misconduct because Plaintiffs "are laymen and were unaware of their legal rights until they consulted knowledgeable third[]parties in 2017," (Pls.' Mem. 7 n.1), again, "'the relevant inquiry is not when Plaintiffs became aware that they had a legal cause of action, but rather when they had sufficient operative facts that indicate[d] that further inquiry [was] necessary.'" (2020 Op. 12 (quoting 2019 Op. 9).) While the Court is sympathetic to the fact that, as a practical matter, Plaintiffs did not "discover" the existence of their claims until 2017, factual "discovery" and legal "discovery" for purposes of tolling the statute of limitations are not analogous, and "[p]ut simply, the discovery rule does not stop the statute of limitations and permit a party to wait until a claim is served up on a silver platter." *Adams v. Deutsche Bank AG & Deutsche Bank Sec., Inc.*, No. 11-CV-1893, 2012 WL 12884365, at *4 (S.D.N.Y. Sept. 24, 2012), *aff'd*, 529 F. App'x 98 (2d Cir. 2013).

requires more than "naked assertions devoid of further factual enhancement" to survive a motion

to dismiss (quotation marks and alteration omitted)); *Twombly*, 550 U.S. at 555 ("[A] plaintiff's

obligation to provide the grounds to his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

(quotation marks omitted)).  Moreover, given that the Certificate clearly states that the Property

is classified as a "[two-]family dwelling," (Compl. (Dkt. No. 3) Ex. 1), it is unclear why a

"standard review of documents pertaining to the . . . Property's county records" would not have

revealed the violation underlying Defendants' alleged fraud, particularly because the Certificate

is specifically identified by date and number in the Notice, (*see* Compl. (Dkt. No. 3) Ex. 2

(identifying "certificate of occupancy #335 issued on 01/26/1925" (capitalization omitted))).[5]

*See Willensky v. Lederman*, No. 13-CV-7026, 2015 WL 327843, at *9 n.17 (S.DN.Y. Jan. 23,

2015) (noting that "to the extent that there was relevant information for [the] [p]laintiff to

ascertain . . . it [was] unclear why [the] [p]laintiff's 'internet investigation' failed to expose [it]").

       Plaintiffs also assert that "[e]quitable tolling should be invoked because Plaintiffs were

prevented from exercising their rights due to the fact that they are laymen who would not have

---

[5] While the Certificate and Notice are not attached to the Second Amended Complaint, both documents are attached to the original Complaint and the Certificate is attached to the First Amended Complaint.  (*See* Compl. (Dkt. No. 3) Exs. 1 & 2; FAC Ex. 1.)  In light of Plaintiffs' pro se status, and the fact that both documents are incorporated into the Second Amended Complaint by reference, (*see* SAC ¶¶ 49, 51, 12(a), 12(b), 12(c), 15, 20(a), 20(b), 20(c), 23, 26(a), 26(b), 26(c), 27); *Leonard F.*, 199 F.3d at 107, and were clearly known to, possessed by, and relied upon by Plaintiffs in bringing suit, *Rothman*, 220 F.3d at 88, the Court finds it appropriate to consider both the Certificate and Notice in ruling on the instant Motion, *see Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (considering factual statements "from [the pro se] [p]laintiffs' Second Amended Complaint, First Amended Complaint, opposition and surreply" in considering the defendant's motion to dismiss).  Moreover, Plaintiffs cite to "SAC Exhibit 1" when referring to the Certificate in their Response to Defendants' Motion, (Pls.' Mem. 2), and appear to attempt to cite to another exhibit when referring to the Notice, (*id.* at 3), indicating that Plaintiffs' failure to attach the Certificate and Notice to their Second Amended Complaint may have been an oversight.

discovered or understood that the [four]-unit . . . Property was classified as a two (2) family dwelling by the PSBB." (SAC ¶¶ 16, 24.) However, as the Court has twice previously noted, "'the Second Circuit has uniformly held that equitable tolling will not be invoked unless . . . [P]laintiff[s] w[ere] prevented in some extraordinary way from exercising [their] rights.'" (2020 Op. 13 (quoting *LaBoy v. Better Homes Depot, Inc.*, No. 03-CV-4271, 2004 WL 6393656, at *6 (E.D.N.Y. July 14, 2004)).) Plaintiffs have added no allegations to their Second Amended Complaint sufficient to plead that Defendants "'acted to prevent [them] from discovering their alleged claims,'" (*id.* (quoting *LaBoy*, 2004 WL 639356, at *6)), and Plaintiffs' pro se or "laymen" status is, standing alone, insufficient to justify equitable tolling as a matter of law, (*see id.* at 13–14 (collecting cases)). Thus, Plaintiffs are not entitled to equitable tolling.

The Court finds that Plaintiffs' Second Amended Complaint fails for the same reasons that their original Complaint and First Amended Complaint failed, and thus, that Plaintiffs' claims of fraud and misrepresentation are barred by the statute of limitations. As such, the Court declines to address Defendants' arguments that Plaintiffs have failed to state a claim and that their claims were released in a prior settlement. (*See* Defs.' Mem. 10–14.)

### 2. New York General Business Law § 349[6]

Liberally construed, Plaintiffs assert claims for violations of New York General Business Law § 349 based on the classification of the Property as a four-unit dwelling, (SAC ¶¶ 26(a)–(d)), continued attempts to foreclose on the Property after expiration of the six-year statute of limitations imposed by New York Civil Practice Law and Rules ("CPLR") § 213(4), (*id.* ¶ 26(e)–

---

[6] As the Court has now twice previously noted, (2019 Op. 12–13 n.3; 2020 Op. 14 n.2), although the Second Amended Complaint cites "New York Code § 349," Plaintiffs appear to assert a claim under New York General Business Law ("GBL") § 349. (*See id.*) The Court therefore analyzes this claim as one under GBL § 349.

(f)), and charges to Plaintiffs of multiple "junk fees" for "BPO inspections," "title searches," and "countless exterior property inspection fees," which Plaintiffs claim are misrepresented and not owed, (*id.* ¶ 26(g)).  Plaintiffs have added no allegations to their Second Amended Complaint that relate to their claims under GBL § 349.  (*Compare* FAC ¶¶ 25–29 *with* SAC ¶¶ 25–29.) Rather, the only allegations that Plaintiffs added to their Second Amended Complaint even ostensibly related to their GBL § 349 claims concern the application of the discovery rule, (SAC ¶ 28), which does not apply to claims brought under GBL § 349, *see In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 00-MD-1898, 2007 WL 1601491, at *14 (S.D.N.Y. June 4, 2007) ("No discovery rule is applicable to [GBL] [§] 349 claims."); *Wender v. Gilberg Agency*, 276 A.D.2d 311, 311–12 (N.Y. App. Div. 2000) ("[The] [p]laintiff's claims under [GBL] § 349, however, are time-barred as . . . the date of discovery rule is not applicable and cannot serve to extend that limitations period.").  As such, for the same reasons stated in the 2020 and 2019 Opinions, Plaintiffs' GBL § 349 claim based on classification of the Property is barred by the statute of limitations, and Plaintiffs have failed to state a claim under GBL § 349 with respect to their other allegations.  (*See* 2019 Op. 12–16; 2020 Op. 14–17.)  *See Bradley v. Amellia*, No. 08-CV-820, 2007 WL 2932772, at *1 (N.D.N.Y. Oct. 5, 2007) (dismissing amended complaint where the pro se plaintiff "fail[ed] to comply" with the court's instructions regarding how to cure deficiencies identified in the original complaint).

### 3.  Slander of Title

As the Court explained in the 2020 Opinion, in amending their original Complaint, Plaintiffs appeared to have added allegations that they have been slandered through the continuous "illegitimate foreclosure proceedings," which have been "attributed to them and reported to credit reporting agencies and bureaus."  (*E.g.*, FAC ¶ 15.)  The Court at that time observed that these claims appear to be in the nature of slander of title or defamation, but

17

declined to address these claims further given Defendants' failure to address the claims in their Motion To Dismiss the First Amended Complaint. (*See* 2020 Op. 17–18.) The Court instructed, "[t]o the extent Plaintiffs attempt to bring a claim of slander of title or defamation, they may do so in a second amended complaint, and Defendants may address the claim in any future motion practice." (*Id.* at 18.) Despite repeating the general claim that they have "suffered the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus," (SAC ¶¶ 15, 23, 27), Plaintiffs failed to include a cause of action in their Second Amended Complaint for slander of title or defamation, (*see generally id.*), and thus, any claim for slander of title or defamation is dismissed, *cf. Spataro v. Gov't Emps. Ins. Co.*, 2015 WL 5599162, at *4 (E.D.N.Y. Sept. 22, 2015) (dismissing with prejudice claim included only in opposition to motion to dismiss, and not the operative complaint, explaining "[b]ecause the [c]ourt previously notified [the] [p]laintiff that [the] claim was not asserted in the [a]mended [c]omplaint, the [c]ourt will not grant [the] [p]laintiff leave to replead this claim for a second time").

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss. Because this is the third adjudication of Plaintiffs' claims against Defendants on the merits, the claims are dismissed with prejudice.[7]

---

[7] *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting a motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and quotation marks omitted)); *see also Herbert v. Delta Airlines*, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (dismissing complaint with prejudice where "[the] [c]ourt previously granted [the pro se plaintiff] leave to replead, identifying his original complaint's deficiencies" and "[the plaintiff's] amended complaint fails to correct any of these

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 47), to mail a copy of this Opinion & Order to Plaintiffs, and terminate Defendants HSBC and Ocwen.

As indicated in Footnote 1, Defendant Stewart Title did not join the instant Motion and, in fact, has not appeared in this Action.  However, the Court finds that dismissal of Plaintiffs' claims against Stewart Title is proper given that Plaintiffs' claims are equally untimely against Stewart Title as they are against HSBC and Ocwen.  As such, Plaintiffs have two weeks from the date of this Order to show cause as to why their claims should not be dismissed against Stewart Title.

SO ORDERED.

Dated:   September 24, 2021
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge

---

deficiencies," explaining that "the [c]ourt lacks the basis to believe further amended pleadings would fare any better").