UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IRIS GRAHAM *and* VICTOR GRAHAM,

                      Plaintiffs,

    v.

HSBC MORTGAGE CORPORATION, *et al.*,

                      Defendants.

No. 18-CV-4196 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Iris Graham
Victor Graham
Mt. Vernon, NY
*Pro se Plaintiffs*

KENNETH M. KARAS, District Judge:

      Plaintiffs Iris Graham and Victor Graham ("Plaintiffs") bring this pro se Action against HSBC Mortgage Corporation ("HSBC"), Ocwen Loan Servicing, LLC ("Ocwen"), and Stewart Title Agency ("Stewart Title"; hereinafter "Defendant"), alleging fraud, misrepresentation, and other state law claims. (*See* Second Am. Compl. ("SAC") (Dkt. No. 40).)  Before the Court is Plaintiffs' Response to the Court's Order to Show Cause as to why claims against Defendant should not be dismissed and Motion for Default Judgment against Defendant. (Pl.'s Resp. to Order To Show Cause & Mot. for Default Judgment ("Pls.'s Resp.") (Dkt. No. 56).)  For the following reasons, Plaintiffs' Request for Default is denied and Plaintiffs' claims are dismissed in their entirety with prejudice.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiffs' Second Amended Complaint and are assumed to be true for the purpose of deciding the instant Motion.

On June 19, 2006, Plaintiffs executed a mortgage (the "Mortgage") with Fremont Investment ("Fremont"), pursuant to which Fremont extended to Plaintiffs a loan of $492,000 secured by property located at 320 South 9th Avenue, Apartment 1, Mount Vernon, New York 10550 (the "Property").  (SAC ¶ 50.)[1]  The Property was originally built in 1924 as a two-family residence, with three apartments on three levels.  (*Id.* ¶ 49.)  On or about January 26, 1925, the Department of Public Safety Bureau of Buildings ("PSBB") issued a Certificate of Occupancy (the "Certificate") classifying the Property as a two-family dwelling.  (*Id.*)  At some point afterward, but prior to Plaintiffs occupying the Property, the Property was "illegally converted" to a four-unit dwelling "at no fault of . . . Plaintiffs."  (*Id.*)  Fremont classified the Property as a "[four]-unit dwelling" and did not disclose to Plaintiffs that the PSBB had classified the Property as a two-family dwelling.  (*Id.* ¶ 50.)  Fremont subsequently assigned its rights to the Mortgage to HSBC.  (*Id.*)  Defendant also approved refinancing for the Property as a four-unit dwelling, "omitting the fact" that the Property was actually classified as a two-family dwelling in the land records.  (*Id.* ¶ 52.)

On or about December 9, 2010, the Department of Buildings of the City of Mount Vernon (the "DOB") issued to Plaintiffs a "Notice of Violation #37121" (the "Notice"), due to

---

[1] Plaintiffs' SAC is inconsistently numbered, jumping from paragraph number 6 to paragraph number 49, and then from paragraph number 58 to paragraph number 7, (*see* generally SAC).  Despite these inconsistencies, the Court refers to the paragraph numbers used by Plaintiffs therein.

2

the Property having been improperly converted to a four-unit dwelling when the land records classified it as a two-family dwelling. (*Id.* ¶ 51.) As a result of the violation, DOB "has been fining Plaintiffs $1,000.00 per day and subjecting Plaintiffs to [the possibility of] one year in prison." (*Id.*)

According to Plaintiffs, they have suffered "severe emotional distress at being assessed millions of dollars in fines and facing the possibility of imprisonment," and have lost "thousands of dollars in potential rental income" due to the legal issues with the Property, which have prevented Plaintiffs from renting the Property to tenants. (*Id.* ¶¶ 15, 23, 27.) Plaintiffs also allege that they have suffered reputational harm from "the slander of their representation due to the fact that illegitimate foreclosure proceedings have been attributed to them and reported to credit reporting agencies and bureaus." (*Id.*) Plaintiffs assert three causes of action against Defendant: fraud, misrepresentation, and violation of New York General Business Law ("GBL") § 349. (*Id.* ¶¶ 7–29.) Construed liberally, Plaintiffs may also seek to assert a claim of slander of title or defamation. (*Id.* ¶¶ 15, 23, 27.) Plaintiffs seek injunctive relief, compensatory and punitive damages, release of all liens on the Property, the "monetary equivalent of attorney's fees and costs," and "[s]pecial damages to account for Plaintiffs' severe emotional distress due to Plaintiffs being subjected to hefty fines and imprisonment." (*Id.* at 15.)[2]

B. Procedural History

Because the procedural background of this Action has been summarized in the Court's previous Opinion & Order on Defendants' Motion To Dismiss the Complaint (the "2019 Opinion"), the Court's Opinion & Order on Defendants' Motion To Dismiss the First Amended

---

[2] The SAC's Section VI, Prayer for Relief, repeats paragraph numbers. As a result, the Court refers to it by its page number based on the ECF-stamp.

Complaint (the "2020 Opinion"), and the Court's Opinion & Order on Defendants' Motion To Dismiss the Second Amended Complaint (the "2021 Opinion"), (*see* Op & Order ("2021 Op.") 4–5 (Dkt. No. 55); Op. & Order ("2020 Op.") 4–5 (Dkt. No. 38); Op. & Order ("2019 Op.") 3 (Dkt. No. 25)), the Court only supplements the procedural history of the case to include the issuance of the 2021 Opinion and its subsequent briefing.

On September 24, 2021, the Court issued the 2021 Opinion dismissing Plaintiffs' claims against HSBC and Ocwen with prejudice. (2021 Op. 19.) The Court found that Plaintiffs' fraud, misrepresentation, and GBL claims were barred by the statute of limitation and that Plaintiffs had failed to plead facts sufficient to justify equitable tolling as a matter of law. (*Id.* at 16–17.) Regarding Plaintiffs' allegation of slander, the Court dismissed on the ground that Plaintiffs had failed to include a cause of action in the SAC for slander of title or defamation. (*Id.* at 17–18.) Further, the Court took notice of Defendant's failure to join the motion to dismiss and non-appearance since the commencement of the Action. (*Id.* at 19.) The Court, finding that dismissal against Defendant was nonetheless proper, however, gave the Plaintiffs two weeks to show cause as to why their claims should not be dismissed against Defendant. (*Id.*)

On October 19, 2021, Plaintiffs filed their Response to the Court's Order to Show Cause and Request for Default. (*See* Pls.'s Resp.) Plaintiffs claim that they are entitled to default judgment against Defendant because Defendant "has not filed a timely answer or other responsive pleading." (*Id.* at 5.) To that end, Plaintiffs argue that Defendant should not be permitted to avail itself of the same defenses used by HSBC and Ocwen to dismiss the claims againt them. (*Id*. at 6.)

II.  Discussion

A.  Standard of Review

1. Default Judgment

Default judgment is generally applicable "[w]hen a party against whom affirmative relief is sought has failed to plead or otherwise defend . . . ." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  It is "available only when the adversary process has been halted because of an essentially unresponsive party." *Nationsbank of Fla. v. Banco Exterior de Espana*, 867 F. Supp. 167, 175 (S.D.N.Y. 1994) (citation and quotation marks omitted).  "[T]he purpose behind default judgments . . . is to allow district courts to manage their dockets efficiently and effectively." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 161 (2d Cir. 1992) (quoting *Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990)).  Default judgment also plays an important role in ensuring compliance with procedural rules.  *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986) ("[D]efault is a useful weapon 'for enforcing compliance with the rules of procedure.'" (citation omitted)).

Rule 55 of the Federal Rules of Civil Procedure prescribes the procedure courts must follow before entering a default judgment.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation.").  According to Rule 55, there is a "two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *Green*, 420 F.3d at 104).

"The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.*  "Rule 55(a) states

5

that a clerk may enter a default upon being advised by affidavit or otherwise that a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (citing Fed. R. Civ. P. 55(a)). "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, . . . a district judge also possesses the inherent power to enter a default . . . ." *Mickalis Pawn Shop*, 645 F.3d at 128 (citations omitted).

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled." *Id*. This step is governed by Rule 55(b). *See* Fed. R. Civ. P. 55(b). While a default is generally entered by the court clerk, a default judgment could either be entered by the court or the clerk. *See Nationsbank*, 867 F. Supp. at 174 n.9 ("The clerk will enter default . . . [t]he clerk or the court will then enter default judgment upon application.") However, it should be noted that "[c]ourts generally will excuse the failure of the moving party to obtain entry of default prior to a motion for default judgment and combine the two steps." *Id.* Thus, the difference between the entry of default and a default judgment is largely procedural, as the substantive entitlement to both become triggered by a party's unresponsiveness in a judicial proceeding. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995) (describing "the entry of a default" as "largely a formal matter" (quotation marks and citation omitted)).

In deciding whether to enter either a default or default judgment under Rule 55(a) or (b), a district court enjoys "broad latitude." *Mickalis Pawn Shop*, 645 F.3d at 129. Accordingly,

> [t]he dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.

*Enron Oil Corp.* 10 F.3d at 95 (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991)).  However, this discretion has been characterized as "circumscribed," *Mickalis Pawn Shop*, 645 F.3d at 129 (quotation marks omitted), as "defaults are generally disfavored and are reserved for rare occasions," *Enron Oil Corp.*, 10 F.3d at 96; *see also S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) ("[T]he sanction of judgment by default . . . is the most severe sanction which the court may apply, and its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited." (quoting *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir. 1964)) (second alteration in original)).  The discretion of the district court is, therefore, limited in scope by the "strong policies favoring the resolution of genuine disputes on their merits . . . ." *In re Martin-Trigona*, 763 F.2d 503, 505 (2d Cir. 1985) (quoting *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983)).

In exercising its discretion, there are three widely accepted factors that "must be assessed" by the district court.  *Enron Oil Corp.*, 10 F.3d at 96.  These factors are: "1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* (collecting cases).  These considerations are to "be weighed in deciding whether to enter a default judgment . . . ." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

With respect to the first factor, willfulness, the district court is required to find "'more than mere negligence' on the part of the defendant in defaulting." *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).  Further, "[a] default is not willful when it was caused by 'a mistake made in good faith.'" *Id.* (citation omitted).  Wilfulness, in this sense, requires a finding of "egregious or deliberate conduct." *Id.* (citation and quotation marks omitted).  Regarding the default's

7

imposition of prejudice, "the district court must consider the effect of the delay caused by the defendant's default, such as thwarting 'plaintiff's recovery or remedy . . . , result[ing] in the loss of evidence, creat[ing] increased difficulties of discovery, or provid[ing] greater opportunity for fraud and collusion.'" *Id.* (alterations in original) (citation omitted). Finally, the Second Circuit has made clear that the final factor means that "the defendant must present evidence of facts that, if proven at trial, would constitute a complete defense." *Id.* (quotation marks omitted) (citing *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998)). "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *In re Suprema Specialties, Inc.*, 330 B.R. 40, 53 (S.D.N.Y. 2005) (quoting *Am. Alliance Ins.*, 92 F.3d at 61).

In addition to the above criteria, the Court has discretion to consider other factors such as "whether the entry of default would bring about a harsh or unfair result," *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted), "whether the claims were pleaded in the [c]omplaint thereby placing the defendant on notice," *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (quotation marks and citation omitted), and "the amount of money potentially involved[—]the more money involved, the less justification for entering the default judgment," *id*. (quotation marks and citation omitted).

"Once the court determines that the [above] factors favor the plaintiff, it must decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted." *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *but see Lenard v. Design Studio*, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) (flipping the order of analysis, i.e. "[w]ithout a response from [the] [d]efendant[], this [c]ourt must *first* determine whether the allegations in [the] [p]laintiff's

8

[c]omplaint are sufficiently pleaded to establish [the] [d]efendant's liability." (emphasis added) (citation omitted)). In its analysis, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp.*, 653 F.2d at 65); *Au Bon Pain Corp.*, 653 F.2d at 65 (holding that when a party moves for a default judgment after another party's default, the moving party is "entitled to all reasonable inferences from the evidence offered" (citation omitted)).

Nothwithstanding the above, there exists a more foundational concern: if a plaintiff fails to state a claim, a court cannot enter default judgment in plaintiff's favor—irrespective of the defendant's failure to appear—and must instead dismiss the claim. *See Pac. M. Int'l Corp.*, 888 F. Supp. 2d at 398 (refusing to enter a default judgment on the plaintiff's claim for fraud because the "plaintiff fail[ed] to state a claim"); *see also Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 502–03 (S.D.N.Y. 2001) (refusing to enter default against the defendant and dismissing the claim as "plaintiffs' claim [we]re without merit"). Indeed, "[a] default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant, regardless of whether the defendant filed a prompt response, or any response at all." *Pac. M. Int'l Corp.*, 888 F. Supp. 2d at 393 (alteration in original) (citation omitted).

Ultimately, because any analysis regarding the discretionary factors is moot if Plaintiffs fail to state a claim against Defendant, the Court begins its analysis on the viability of the claims. *See Lenard*, 889 F. Supp. 2d at 528 ("Without a response from [the] [d]efendant[], th[e] [c]ourt must *first* determine whether the allegations in [the] [p]laintiff's [c]omplaint are sufficiently pleaded to establish [the] [d]efendant's liability." (emphasis added) (citation omitted)).

### 2. Stating a Claim

Federal Rule of Civil Procedure 8(a)(2) provides the requirements a plaintiff must meet in order to adequately state a claim. *See* Fed. R. Civ. P. 8(a)(2). According to the provision, stating a claim requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* While 'detailed factual allegations' are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563 (citation omitted), and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" (third alteration in original) (citation omitted) (quoting

Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

B. Analysis

1. Plaintiffs Fail To State A Claim

A plaintiff fails to state a claim where the claim is barred by the statute of limitation, especially where the time-bar can be gleaned from the face of the complaint. *See LC Capital Partners, LP v. Frontier Insurance Group, Inc.*, 318 F.3d 148, 156–57 (2d Cir. 2003) (holding that, because "the facts on the face of the complaint and related documents" placed the plaintiffs at least on inquiry notice prior to the commencement of the limitations period, dismissal on statute-of-limitations grounds is appropriate under Rule 12(b)(6)); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations" the complaint may properly be dismissed pursuant to "Rule 12(b)(6) . . . for failure to state a claim upon which relief can be granted. . . .").

As this Court has dismissed Plaintiffs' fraud and GBL § 349 claims against HSBC and Ocwen on statute of limitations grounds, (*see* 2021 Op. 16–17), the Court must consider whether the same can form the basis for a dismissal against Defendant. However, unlike for the dismissal of the claims against HSBS and Ocwen, the Court cannot rely on any of Defendant's pleadings or motions given its failure to appear. The Court must therefore decide whether such a defense can be considered sua sponte.

a. Sua Sponte Consideration of Statute of Limitations

Generally, before affirmative defenses can be considered, they must be raised by the defendant at the pleading stage. *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp.

11

2d 682, 710 (S.D.N.Y. 2012) ("Fed. R. Civ. P. 8(c) requires a defendant to 'affirmatively state any avoidance or affirmative defense,' and affirmative defenses that are not raised in the pleading stage should be dismissed." (citation omitted)). This includes statute of limitations defenses. *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) ("The statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c) that must be asserted in a party's responsive pleading 'at the earliest possible moment' and is a personal defense that is waived if not promptly pleaded." (collecting cases)).

However, "[w]hile [such] defenses are 'ordinarily' not to be recognized when not raised in the answer, . . . no absolute bar to the consideration of such claims exists." *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (quoting *Davis*, 810 F.2d at 44 ); *see also De Santis v. City of New York*, No. 10-CV-3508, 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014) ("Both the Supreme Court and the Second Circuit have long held that courts may dismiss actions on their own motion in a broad range of circumstances where they are not explicitly authorized to do so by statute or rule." (quoting *Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999))). Indeed, the Second Circuit has made clear that "district courts may dismiss an action sua sponte on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers [the] plaintiff himself submitted.'" *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (italics omitted) (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)); *see also Wright v. Rensselaer Cty. Jail*, 771 F. App'x 58, 59–60 (2d Cir. 2019) (summary order) ("While untimeliness is an affirmative defense, a district court can sua sponte dismiss untimely claims where the defense is apparent on the face of the complaint." (italics omitted) (citation omitted)); *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1995) (affirming sua sponte dismissal of complaint as frivolous on statute of limitations

12

grounds); *Leonhard*, 633 F.2d at 609 n.11 ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim . . . . There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds . . . where . . . the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (citations omitted)); *Hunt v. Bronx Lebanon Hosp.*, No. 22-CV-54, 2022 WL 375415, at *3 (S.D.N.Y. Feb. 7, 2022) ("Dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading." (citation omitted)). In light of this discretion, "[a] court does not have to wait for a motion to dismiss, and waste judicial time and resources" before considering an affirmative defense such as the statute of limitations. *Jones v. City of New York*, No. 18-CV-1937, 2021 WL 5562694, at *5 (S.D.N.Y. Nov. 29, 2021) (alteration in original) (quoting *Gilmore v. Gilmore*, No. 09-CV-6230, 2010 WL 4910211, at *2 (S.D.N.Y. Nov. 15, 2010)).

    Here, the facts supporting the statute of limitations defense are set forth in Plaintiffs' SAC. (*See generally* SAC.) Plaintiffs have alleged that the fraudulent inducement began on June 19, 2006. (SAC ¶ 50.) They have further claimed that "[o]n or about December 9, 2010," the DOB issued them a Notice of Violation "due to the Subject Property having been converted to a four (4) unit dwelling while the land records classif[ied] it as a two (2) family dwelling. . . . and has been fining [them] $1,000.00 per day and subjecting [them] to one year in prison." (*Id.* ¶ 51.) However, Plaintiffs have nevertheless claimed that they were "unaware of Defendant[']s] fraudulent actions" even after conducting a "reasonable investigation." (*Id.* ¶¶ 16, 24, 28.) Plaintiffs' rely on their purported lack of awareness as the basis for requesting the invocation of equitable tolling. (*Id.*) Accordingly, the Court can consider these facts sua sponte in considering whether Plaintiffs timely stated a claim.

### b. Fraud and Negligent Misrepresentation

As the Court has previously instructed, (*see* 2021 Op. 8–10; 2020 Op. 7–9; 2019 Op. 6–8), "[u]nder New York law, the time within which an action based upon fraud must be commenced is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it.'" *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 154 (2d Cir. 2012) (alteration omitted) (quoting N.Y. C.P.L.R. § 213(8)); *see also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 477 (S.D.N.Y. 2014) (citing the same provision and adopting a substantively identical standard). Similarly, "New York courts apply a six year statute of limitations to negligent misrepresentation claims sounding in fraud." *United Teamster Fund*, 39 F. Supp. 3d at 477 (citing N.Y. C.P.L.R. §§ 213(1), (8)); *see also Von Hoffman v. Prudential Ins. Co. of Am.*, 202 F. Supp. 2d 252, 263 (S.D.N.Y. 2002) ("In New York, a claim for negligent misrepresentation based on the same facts as a claim for fraud is governed by the six-year statute of limitation for fraud under [N.Y.] C.P.L.R. § 213(8)." (citation omitted)).

As stated above, the Court may consider the relevant statute of limitations arguments made clear on the face of the SAC. Additionally, Plaintiffs' fraud and negligent misrepresentation claims against Defendant are identical to those levied against HSBC and Ocwen, which the Court dismissed as time-barred. (*See* 2021 Op. 8–16; 2020 Op. 7–14; 2019 Op. 6–12). Indeed, the Court finds that Plaintiffs' claims against Defendant are similarly time-barred for the same reasons articulated in its prior Opinions. (*See id.*) This is the case "regardless [of] whether the six-year limitations period dating from the fraud or the two-year period dating from its discovery applies." *Pirri v. Cheek*, No. 19-CV-180, 2019 WL 2472438, at *4 (S.D.N.Y. June 13, 2019). "Because dismissal on statute of limitation grounds is a dismissal

for failure to state a claim, . . . the Court dismisses" only the claims under this heading. *Nimham-El-Dey v. Vasquez*, No. 21-CV-8240, 2022 WL 603515, at *2 (S.D.N.Y. Feb. 28, 2022) (citation omitted).

### c. New York General Business Law § 349

Liberally construed, Plaintiffs also assert a claim for violations of GBL § 349 based on the classification of the Property as a four-unit dwelling. (SAC ¶ 26(b).) As stated in the 2021 Opinion, Plaintiffs have added no allegations to their SAC that relate to their claims under GBL § 349. (2021 Op. 17.) Rather, the only allegations that Plaintiffs made in their SAC even ostensibly related to their GBL § 349 claims concern the application of the discovery rule, (SAC ¶ 28), which does not apply to claims brought under GBL § 349, *see Wender v. Gilberg Agency*, 716 N.Y.S.2d 40, 41–42 (App. Div. 2000) ("[The] [p]laintiff's claims under [GBL] § 349, however, are time-barred as . . . the date of discovery rule is not applicable and cannot serve to extend that limitations period." (citation omitted)). As such, for the same reasons stated in the 2021, 2020 and 2019 Opinions, Plaintiffs' GBL § 349 claim based on classification of the Property is barred by the statute of limitations. (*See* 2021 Op. 16–17; 2020 Op. 14–17; 2019 Op. 12–16.)

### d. Slander of Title/Defamation

As the Court explained in the 2021 Opinion, Plaintiffs failed to include a cause of action in their SAC for slander of title or defamation. (*See* 2021 Op. 17–18 (citing SAC ¶¶ 15, 23, 27).) Thus, Plaintiff's claim for slander of title or defamation cannot be countenanced, let alone awarded default judgment. *See Pac. M. Int'l Corp.*, 888 F. Supp. 2d at 393 (noting that "[a] default judgment is inappropriate where a plaintiff has failed to state a cause of action against the allegedly defaulting defendant" (alteration in original) (citation omitted)).

III. Conclusion

For the foregoing reasons, the Court denies Plaintiffs' application for default judgment and dismisses Plaintiffs' claims against Defendant with prejudice. The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 56), mail a copy of this Order to Plaintiffs, and close this case.

SO ORDERED.

DATED: April 28, 2022
White Plains, New York

KENNETH M. KARAS
United States District Judge